UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JAMES BAKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:11-CV-205-NAB |
| ) | |
| CAROLYN W. COLVIN[1], ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying James Baker's ("Baker") application for a period of disability and disability insurance benefits and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act. Baker alleges disability due to bipolar disorder, manic depression, and thyroid problems. (Tr. 235.) The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). [Doc. 9.] Based on the following, the Court will affirm the Commissioner's decision.

**I.     Procedural History**

On April 7, 2010, Baker filed applications for a period of disability, disability insurance benefits, and SSI benefits. (Tr. 169-179.) The Social Security Administration ("SSA") denied Baker's claim and he filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 60-68.) The SSA granted Baker's request and the hearing took place on January

---

[1] At the time this case was filed, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Carolyn W. Colvin for Michael J. Astrue in this matter.

24, 2011. (Tr. 24-59.) The ALJ issued a written decision on May 13, 2011, upholding the denial of benefits. (Tr. 10-19.) Baker requested review of the ALJ's decision from the Appeals Council and on September 16, 2011, the Appeals Council denied Baker's request for review. (Tr. 1-3.) The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel,* 530 U.S. 103, 107 (2000). Baker filed this appeal on November 17, 2011. [Doc. 1.] The Commissioner filed an Answer on February 10, 2012. [Doc. 10.] Baker filed a Brief in Support of his Complaint on March 9, 2012. [Doc. 12.] The Commissioner filed a Brief in Support of the Answer. [Doc. 19.]

The Court has reviewed the parties' briefs, the ALJ decision, the record including the hearing transcript and medical documentary evidence. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## II.     Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant

must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(iii).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At step five, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity to perform a significant number of jobs in the national economy.  *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000).  If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision.  *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994).  Therefore, even if this Court finds that there is a preponderance of evidence against the weight of the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler,* 733 F.2d 65, 68 (8th Cir. 1984).  An administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.  *Gwathney v. Chater,* 1043, 1045 (8th Cir. 1997).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;

3

>(3) The medical evidence given by the claimant's treating physician;
>
>(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
>(5) The corroboration by third parties of the claimant's physical impairment;
>
>(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
>
>(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

### III.   ALJ's Decision

The ALJ determined that Baker met the insured status requirements of the Social Security Act through December 31, 2013 and he has not engaged in substantial gainful activity since December 7, 2007, the alleged onset date of disability. (Tr. 12.) The ALJ found that Baker had the severe impairments of polysubstance abuse including cocaine, marijuana and alcohol, substance induced mood disorder, nicotine abuse, personality disorder, not otherwise specified, thyroid problems, crooked spine and lower back pain, borderline intellectual functioning[2], entrenched bereavement disorder with dependent traits, bipolar affective disorder, and major depressive disorder. (Tr. 12-13.) Next, the ALJ determined that Baker did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13.) The ALJ also found that Baker had the residual functional capacity ("RFC") to perform light work with the following limitations: (1) no pushing and/or pulling with the lower extremities, (2) occasional crawling or kneeling, (3) no air or vibrating tool use, (4) no operation of motor vehicles, (5) no work at

---

[2] Borderline intellectual functioning is an IQ between 71-84. Diagnostic and Statistical Manual of Mental Disorders 740 (4th ed. Text Rev. 2000) ("DSM-IV-TR").

4

unprotected heights, (6) limited to brief, superficial, directly work related, and occasional contact with co-workers, (7) limited to brief, superficial, directly work related, and occasional contact with supervisors, (8) no interaction with the general public, and (9) SVP[3] level of 1 or 2. (Tr. 14.) The ALJ found that Baker was unable to perform any past relevant work, but considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Baker can perform. (Tr. 18.) Finally, the ALJ concluded that Baker has not been under a disability, as defined in the Social Security Act, through the date of the decision. (Tr. 19.)

## IV. Discussion

Baker asserts that the ALJ committed two reversible errors. First, Baker contends that the ALJ failed to properly conduct a drug addiction or alcoholism analysis by finding that Baker did not meet a listing because of his drug and alcohol abuse. Second, he claims the ALJ erred in finding that Baker did not meet Listing 12.05(C). The Commissioner asserts that the ALJ's opinion is supported by substantial evidence in the record as a whole.

### A. Listing 12.05(C)

Baker contends that the ALJ committed reversible error by failing to find that he met or equaled Listing 12.05(C). Baker states that he had a valid non-verbal score of 64, a limited education with poor adaptive skills, and severe impairments. The Commission asserts that Baker does not meet the criteria for any subsection under Listing 12.05.

If a mental impairment is severe, the Commissioner must determine if it meets or is equivalent in severity to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).

---

[3] SVP is the acronym for "specific vocational preparation time; i.e., how long it generally takes to learn a job." *See Fines v. Apfel*, 149 F.3d 893, 895 (8th Cir. 1998).

An individual may be considered for mental retardation under Listing 12.05 at step three of the evaluation process. *Phillips v. Colvin*, 721 F.3d 623, 625 (8th Cir. 2013). "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period , i.e., the evidence demonstrates or supports onset of the impairment before age 22. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Listing 12.05 requires the complainant to show either (1) mental incapacity evidenced by dependence on others for personal needs and inability to follow directions; (2) a valid verbal, performance, or FSIQ of 59 or less; (3) a valid verbal, performance or FSIQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of function, or (4) a valid verbal, performance, or FSIQ of 60 through 70 resulting in at least two of the following:  marked restriction in activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation, each of extended duration. *Id.*

An impairment is medically equivalent to a listed impairment contained in appendix 1, if it is at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. §§ 404.1526(a), 416.926(a). If a claimant has a combination of impairments, neither of which meets a listing, the Commissioner is required to compare the claimant's findings with those for closely analogous listed impairments. 20 C.F.R. §§ 404.1526(b)(3), 416.926(b)(3). If the findings related to the impairments are at least of equal medical significance to those of a listed impairment, the Commissioner will find that the impairment or impairments are medically equivalent to that listing. 20 C.F.R. §§ 404.1526(b)(3), 416.926(b)(3). In determining medical equivalence, all of the evidence in the case record about the impairment and its effect on the claimant is relevant including the opinions of medical and psychological consultants designated

by the Commissioner. 20 C.F.R. §§ 404.1526(c), 416.926(c). Age, education, and work experience are not considered. *Id.* The fact that the ALJ does not elaborate on his conclusion that the claimant's impairments do not meet or medically equal a listed impairment does not require reversal when the record supports the ALJ's overall conclusion. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006).

"Listing 12.05(C) is based on a combination of an IQ score with an additional and significant mental or physical impairment. The criteria for this paragraph are such that a medical equivalence determination would very rarely be required." *Phillips*, 721 F.3d at 630 (citing POMS § DI 24515.056). "However, slightly higher IQ's (e.g. 70-75) in the presence of other physical or mental disorders that impose additional and significant work related function may support an equivalence determination." *Id.* at 630. "[G]enerally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found." *Id.* In cases where more than one IQ is customarily derived from the test administered, *e.g.,* where verbal, performance and full scale IQs are provided in the Wechsler series, the lowest of these is used in conjunction with Listing 12.05. *Id.* at 630.

Merely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing." *McCoy v. Astrue*, 648 F.3d 605, 611-12 (8th Cir. 2011); 20 C.F.R. § 404.1525(d) (An impairment cannot meet a listing based solely on a diagnosis). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (emphasis in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 529-30

7

(1990) (superseded by statute on other grounds). "The claimant has the burden of proving that [his] impairment meets or equals a listing." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010).

In this case, the Court finds that the failure to find that Baker met Listing 12.05(C) is supported by substantial evidence in the record as a whole. Baker is currently forty-five years old. (Tr. 180.) There is no evidence in the administrative record demonstrating that Baker had sub-average intellectual functioning with deficits in adapative functioning before the age of 22. An IQ test administered in October 2010, when Baker was forty-two, shows a full scale IQ score of 72, with a verbal standard score of 81 and a non-verbal score of 64. (Tr. 583.) Dr. Sara Hollis opined that Baker was functioning in the average range of intelligence. (Tr. 583.) Baker did not allege disability due to mental retardation or borderline intellectual functioning when applying for benefits. (Tr. 235.) "The absence of a record of treatment, diagnosis, or even inquiry into a mental impairment prior to applying for benefits weighs against finding there to be an impairment." *Clay v. Barnhart*, 417 F.3d 922, 929 (8th Cir. 2005). Moreover, Baker has never been terminated from a job because of a lack of intellectual ability. Baker testified that he lost his jobs because of his behavior and drugs (Tr. 40.) and noted on his Work Activity Report that he left his jobs because of his drug problem, warrants for his arrest, and failure to obtain a raise. (Tr. 295-96.) Baker also obtained a GED. (Tr. 582.) In addition, the record shows that Baker's borderline intellectual functioning did not prevent him from holding employment for several years with the cognitive abilities he currently possesses. *See Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). There is no evidence that Baker has a physical or mental impairment imposing an additional significant work related limitation of function. Therefore, substantial evidence supports a finding that Baker's mental impairments do not meet or medically equal Listing 12.05(C).

**B.     Drug Addiction and Alcohol Determination**

Next, Baker contends that the ALJ's decision did not reflect the applicable regulations regarding how to account for substance use disorders, failed to consider his total global assessment functioning score, and whether his mental illness was the cause of his non-compliance with recommended treatment.

The Social Security Act states that if alcohol or drug abuse is a contributing factor material to the determination of disability, the application must be denied.  42 U.S.C. § 423(d)(2)(C).  The burden of proving that substance abuse is not a contributing factor material to the disability determination falls on the claimant.  *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000).  "The plain text of the relevant regulation requires the ALJ to first determine whether [the claimant] is disabled."  *Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003); 20 C.F.R. §§ 404.1535(a), 416.925(a).  "The ALJ must reach this determination initially, … using the five-step approach without segregating out any effects that might be due to substance use disorders."  *Brueggemann*, 348 F.3d at 694.  "The ALJ must base this disability determination on substantial evidence of [the claimant's] medical limitations without deductions for the assumed effects of substance use disorders.  *Id.*  "The inquiry here concerns strictly symptoms, not causes, and the rules for how to weigh evidence of symptoms remain well established."  *Id.*  Substance use disorders are simply not among the evidentiary factors [precedents] and the regulations identify as probative when an ALJ evaluates a physician's expert opinion in the initial determination of the claimant's disability."  *Id.*  "If the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent."  *Id.* at 694-95.

9

Only after the ALJ has made an initial determination that a claimant is disabled, that drug or alcohol use is a concern, and that substantial evidence on the record shows what limitations would remain in the absence of alcohol or drug addiction, may he then reach a conclusion on whether the claimant's substance use disorders are a contributing factor material to the determination of disability. *Brueggemann*, 348 F.3d at 695.  "If the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise acknowledged disability, the claimant's burden has been met and an award of benefits must follow." *Id.* at 693.  "When an applicant is actively abusing drugs, this inquiry is necessarily hypothetical, and thus more difficult than if the claimant had stopped." *Kluesner v. Astrue*, 607 F.3d 533, 538 (8th Cir. 2010).  "Even though the task is difficult, the ALJ must develop a full and fair record and support his conclusion with substantial evidence on this point just as he would on any other." *Brueggermann*, 348 F.3d at 695.

In this case, the ALJ did not cite to the Social Security regulations regarding how to account for substance use disorders in disability determination cases.  The ALJ's decision first found that Baker met the insured status requirements and had not engaged in substantial gainful activity.  The ALJ then found that Baker had several severe impairments.  At step three in the evaluation process, the ALJ determined that the severity of Baker's impairments meet the requirements of Listing 12.09, substance abuse disorder (considered under Listing 12.04, when substance abuse is considered).  (Tr. 13.)  The ALJ determined that Baker did not meet any listing, singly or in combination, when substance abuse is not considered.  (Tr. 13-14.)

Baker contends that the ALJ should have further developed the record by consulting a medical expert regarding whether his substance abuse was a contributing factor material to the disability determination.  There is no bright line test for determining when the [Commissioner]

10

has failed to develop the record. The determination in each case must be made on a case by case basis." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994). A claimant for social security disability benefits has the responsibility to provide medical evidence demonstrating the existence of an impairment and its severity during the period of disability and how the impairment affects the claimant's functioning. 20 C.F.R. §§ 404.1512(c), 416.912(c). The ALJ has a duty to fully develop the record. *Smith v. Barnhart,* 435 F.3d 926, 930 (8th Cir. 2006) (citation omitted). This duty requires the ALJ to develop a complete medical history for the claimant for at least twelve months preceding the month in which the claimant's application was filed before making a determination. 20 C.F.R. §§ 1512(d), 416.912(d). In some cases, this duty requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision. *See* 20 C.F.R. §§ 404.1519a(b), 416.919a(b). "[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial. *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995). "A claimant bears the burden of proving the ALJ failed to adequately develop the record and this failure resulted in prejudice." *Sullins v. Astrue*, No. 4:10-CV-1014 MLM, 2011 WL 4055943 (E.D. Mo. Sept. 6, 2011) (citing *Onstad v. Astrue*, 999 F.2d 1232, 1234 (8th Cir. 1993)).

The Court finds that the record was sufficiently developed in this case. The medical record shows several hospitalizations and emergency room visits, which were initiated by Baker due to his abuse of drugs. At almost every admission, Baker reported that a family member had died, he relapsed into drugs, and was now suicidal. Although the ALJ found that Baker was not credible when asserting that he had long periods of sobriety, the ALJ noted that Baker did have periods of sobriety after he had undergone detoxification. (Tr. 16-18.) There is nothing in the

medical record to suggest anything other than what is clearly apparent, Baker's abuse of drugs is a contributing factor material to the determination of disability.

Next, Baker asserts that the ALJ did not consider his total global assessment functioning score history, which showed that he exhibited serious symptoms of mental illness even in the hospital's highly structured environment.  Global Assessment Functioning is a "clinician's judgment of the individual's overall level of functioning."  Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Rev. 2000).  "[The Commissioner] has declined to endorse the [GAF] score for use in the Social Security and [SSI] disability programs, and has indicated that GAF scores have no direct correlation to the severity requirements of the mental disorders listings."  *Jones v. Astrue*, 619 F.3d 963, 973-974 (8th Cir. 2010).  "An ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it."  *Jones*, 619 F.3d at 974.

Baker's reliance on *Pate-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 1995) is misplaced.  In *Pate-Fires*, the claimant had an extensive mental health history, with a single notation of reported marijuana use.  In this case, Baker's medical history shows that his low GAF scores occurred when he was abusing cocaine, marijuana, and alcohol for extended periods of time.  Unlike *Pate-Fires*, Baker's medical evidence indicates that substance abuse is a significant factor in Baker's impairments.  Although the ALJ did not discuss Baker's GAF scores, he cited to the medical records that contain those scores.  "An ALJ is not required to discuss every piece of evidence submitted."  *Wildman v. Astrue*, 596 F.3d 959, 966 (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).  "Moreover, an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."  *Id.* (highly unlikely that ALJ did not consider and reject physician's opinion when ALJ made specific references to other findings set forth in

12

physician's notes). Therefore, the Court finds there was no error in the ALJ's consideration of Baker's GAF score history.

Finally, Baker contends that the ALJ should have considered whether his mental illness was the cause of his failure to seek treatment. The Court finds that substantial evidence in the record demonstrates that the ALJ considered whether Baker's mental illness was the cause of his failure to seek treatment. (Tr. 13-18.) Specifically, the ALJ found that Baker's mental impairments are exhibited when Baker abuses substances and no longer has access to them. (Tr. 13.) The ALJ also found that Baker's inpatient treatment providers opined that he showed hypomanic symptoms with stimulant abuse and after a long period of abuse, it leads to depression. (Tr. 14.) The ALJ also noted that Baker had not sought treatment for any impairment unrelated to the symptoms of withdrawal from substance abuse and failed to follow through with outpatient treatment. (Tr. 17.) Therefore, the ALJ's opinion sufficiently addresses the evidence in the medical record regarding the intersection between Baker's impairments, his substance abuse, and failure to seek treatment.

Accordingly,

**IT IS HEREBY ORDERED** that the relief which Baker seeks in his Complaint and Brief in Support of Plaintiff's Complaint is **DENIED**. [Docs. 2,12.]

**IT IS FURTHER ORDERED** that the Court will enter a separate judgment in favor of the Commissioner.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Carolyn W. Colvin for Michael J. Astrue in the court record of this case.

Dated this 24th day of October, 2013.

                                               /s/ Nannette A. Baker                            .
                                              NANNETTE A. BAKER
                                              UNITED STATES MAGISTRATE JUDGE